IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LATRESSA D. SMITH,<br><br>      Plaintiff,<br>v.<br><br>CAROLYN W. COLVIN, in her capacity as Acting Commissioner of the Social Security Administration[1],<br><br>      Defendant. | MEMORANDUM DECISION AND ORDER REVERSING AND REMANDING DECISION OF COMMISSIONER<br><br>Case No.: 2:12-cv-707-BCW<br><br>Magistrate Judge Brooke Wells |

All parties in this case have consented to having United States Magistrate Judge Brooke C. Wells conduct all proceedings in this case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[2]

Plaintiff Latressa D. Smith ("Plaintiff") seeks judicial review of the determination of the Commissioner of the Social Security Administration that denied her application for Social Security Disability and Disability Insurance Benefits. After careful consideration of the written briefs and the administrative record, the Court has determined that oral argument is unnecessary and issues the following Memorandum Decision and Order REVERSING and REMANDING the decision of the Commissioner.

---

[1] On February 14, 2013, Carolyn W. Colvin ("Commissioner") became the Acting Commissioner of the Social Security Administration. Accordingly, she has been automatically substituted for Michael J. Astrue as the defendant in this action. See 42 U.S.C. §405(g)("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."); F.R.C.P. 25(d)("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise.)

[2] See 28 U.S.C. §636(c); F.R.C.P. 73; docket no. 18.

**BACKGROUND**

Plaintiff, Latressa Smith, who was born on February 28, 1979,[3] filed an application for Disability and Disability Insurance Benefits on November 29, 2008.[4] In her application for benefits, Plaintiff alleged an onset date of disability of November 11, 2004.[5] However, Plaintiff only meets the insured status requirements through June 30, 2009.[6]

Plaintiff contends she is disabled due to a combination of impairments including mixed connective tissue disorder, irritable bowel syndrome and mental limitations.[7] Plaintiff's claims were initially denied on April 7, 2009, and upon reconsideration on July 14, 2009.[8] Plaintiff then requested an administrative hearing.[9] A hearing before an Administrative Law Judge ("ALJ") was held on November 30, 2010.[10] On February 24, 2011, the ALJ issued a written decision denying Plaintiff's claim for benefits.[11] Plaintiff then appealed the denial to the Social Security Appeals Council which denied a review of the ALJ's decision on June 12, 2012.[12] Pursuant to 42 U.S.C. § 405(g), this appeal followed.

In the ALJ's decision, the ALJ found at Step One of the required sequential evaluation process[13] that Plaintiff had not engaged in substantial gainful activity since November 11, 2004

---

[3] Administrative Record, docket no. 8 [hereinafter referred to as "Tr."] at 128.

[4] Tr. at 12.

[5] Id.

[6] Id.

[7] Opening Br., docket no. 19 at p. 3-6.

[8] Tr. at 12.

[9] Tr. at 76-82.

[10] Tr. at 31.

[11] Tr. at 12-24.

[12] Tr. at 1-3.

[13] See Grogan v Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(explaining the five-step sequential evaluation process for determining if a claimant is disabled).

(the alleged onset date) through June 30, 2009 the date last insured.[14] At Step Two, the ALJ found the Plaintiff's severe impairments to be (1) mixed connective tissue disease with joint pain and Raynaud's phenomenon and (2) irritable bowel syndrome.[15] At Step Three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments contained within the regulations.[16]

Next the ALJ found that the Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> [t]he claimant can lift/carry 10 pounds occasionally and less than 10 pounds frequently. She must be able to sit and stand at will. She can sit 1 hour at a time up to 6 to 8 hours. She can stand 20 minutes at a time up to standing/walking 2 of 8 hours. She can frequently finger and feel bilaterally. She can constantly reach and handle bilaterally. She must avoid even moderate exposure to extreme cold. She must have immediate access to the bathroom, but less than two additional breaks in the morning and two additional breaks in the afternoon not to exceed 5 minutes each. She has no postural, visual, communicative or mental limitations.[17]

In making the RFC determination, the ALJ found "claimant describes her symptoms as more severe than the record indicates."[18] The ALJ then went on to provide specific examples as to this finding.[19]

As to the medical opinions used in making the RFC determination, the ALJ begins his discussion of medical opinions with the following statement of law: "[e]very medical opinion, regardless of source, must be evaluated using the following factors: examining relation, treatment relation, supportability, consistency, specialization, understanding of the disability

---

[14] Tr. at 14.
[15] Id.
[16] Id.
[17] Tr. at 15.
[18] Tr. at 18
[19] See Tr. 18-22.

3

program, and the extent to which the medical source is familiar with other information in the claimant's case record."[20] The ALJ then discussed the medical records, findings, and opinions of Dr. Douglas Callahan, Dr. Sara Andersen and the non-examining state agency medical consultants.[21] As to Drs. Callahan and Andersen, the ALJ discussed the opinions of both doctors as contained in their respective "Treating Physicians Rheumatoid Arthritis RFC" forms. On the forms, both doctors opined that Plaintiff met the requirements for disability. However, the ALJ gave both opinions little weight because the opinions were not supported by the doctors' treatment notes or visit history. Specifically, in discounting Dr. Callahan, the ALJ stated:

> [a]lthough the record shows, he treated the claimant from June 2005 to June 2008, he saw the claimant infrequently and had not seen her for more than two years before completing his opinion. His opinion is not entitled to controlling weight because it is not supported by his treatment notes, or any other evidence in the record. He consistently says no musculoskeletal difference on treatment notes, but the undersigned believes this is unreviewed boilerplate since he continues to say this when he first make the R.A. diagnosis. The specified limitations closely correspond to those asserted by the claimant at the hearing.[22]

As to Dr. Andersen's opinion the ALJ noted Plaintiff's visit history with Dr. Andersen, and reasoned due to the date Plaintiff was last insured, only two months of Dr. Andersen's records were pertinent for disability purposes.[23] Next, the ALJ stated that Dr. Andersen's opinion is inconsistent with her treatment records and further stated

> Dr. Andersen indicated the claimant could not work since November 11, 2004, but she did not begin to treat the claimant until June 2009. Even if the limitations Dr. Andersen reported in November 2010 are accurate based on a recent increase in symptoms due to discontinuation of Naproxen, they shed little light on the claimant's abilities on or before her date last insured in June 2009.[24]

---

[20] Tr. at 22 (internal citations omitted).

[21] Tr. 22-23.

[22] Tr. at 23.

[23] Tr. at 23.

[24] Tr. at 23.

The ALJ's opinion then briefly described the assessments of the reviewing agency medical experts but the ALJ was "not persuaded by these opinions because the State agency physicians did not have the benefit of actually examining the claimant or considering the record in its entirety."[25] Thus, the ALJ did not assign any medical opinion "controlling weight."

At Step Four, the ALJ found through the date last insured, Plaintiff was capable of performing past relevant work as a data entry clerk.[26] At Step Five, the ALJ found "…claimant was not under a disability, as defined in the Social Security Act, at any time from November 11, 2004…through June 30, 2009, the date last insured."[27] Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.[28]

## **STANDARD OF REVIEW**

This Court's review of the ALJ's decision is limited to determining whether his findings are supported by "substantial evidence" and whether the correct legal standards were applied.[29] If supported by substantial evidence, the findings are conclusive and must be affirmed.[30] "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[31] Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being

---

[25] Tr. at 23.

[26] Id.

[27] Id.

[28] Tr. at 29.

[29] Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); Ruthledge v. Apfel, 230 F.3d 1172, 1174 (10th Cir. 2000); Glenn v. Shalala, 21 F.3d 983 (10th Cir. 1993).

[30] Richardson v. Perales, 402 U.S. 389, 401 (1981).

[31] Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996).

5

supported by substantial evidence."[32]  Moreover, a decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record."[33]

Additionally, the ALJ is required to consider all of the evidence; however, the ALJ is not required to discuss all evidence.[34]  In its review, the Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[35]  However, a reviewing Court should not re-weigh the evidence or substitute its own judgment for that of the ALJ's.[36]  Further, the Court "…may not 'displace the agenc[y]'s choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo."[37]  Lastly, "[t]he failure to apply the correct legal standard[s] or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[38]

In applying these standards, the Court has considered the Administrative Record, relevant legal authority, and the parties' briefs and arguments.  The Court deems oral argument to be unnecessary, and finds as follows:

## **ANALYSIS**

In her appeal, Plaintiff raises two issues:  (1) whether the ALJ erred by failing to properly evaluate the medical opinion evidence in the record and (2) whether the ALJ

---

[32] Zolanski v. FAA, 372 F.3d 1195, 1200 (10th Cir. 2000).

[33] Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009)(internal citation omitted).

[34] Id. at 1066.

[35] Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999).

[36] Qualls v. Apfel, 206 F.3d 1368, 1371 (10th Cir. 2000).

[37] Lax, 489 F.3d at 1084 (quoting Zoltanski, 372 F.3d at 1200).

[38] Jensen v. Barnhart, 436 F.3d 1163, 1165 (10th Cir. 2005)(internal citations omitted).

erred by failing to include all of Plaintiff's established impairments in the residual functional capacity.[39]

After considering these issues and upon consideration of the record, the Court finds issue one (1) to be dispositive and for the reasons set forth below warrants remand. Therefore, because Plaintiff's other arguments may be affected by the determination on remand, the Court will not address them and therefore limits the discussion to whether the ALJ properly addressed the opinions of the Plaintiff's treating and examining medical providers.

   1.   **Treating and Examining Medical Providers**

In support of her claim that the Commissioner's decision should be reversed and remanded, Plaintiff argues that the ALJ erred by improperly rejecting the opinions of Plaintiff's treating physicians, Drs. Callahan and Andersen. Plaintiff further argues the ALJ erred in his RFC determination by stating that Plaintiff had no mental limitations when in fact there is evidence in her treatment documents indicating treatment and evaluation of Plaintiff's mental impairments. Specifically, Plaintiff contends that the ALJ erred by failing to evaluate or weigh the opinion of Dr. Christina Durham, a mental health specialist who performed a psychological evaluation of Plaintiff and found some mental limitations.

Defendant argues that it was reasonable for the ALJ to give the opinion of Dr. Callahan little weight because he treated Plaintiff infrequently and his opinion was based primarily on Plaintiff's subjective complaints.[40] In addition, because a majority of Dr. Andersen's treatment of Plaintiff occurred after the date Plaintiff was last insured, it was reasonable for Dr.

---

[39] As to the Plaintiff's second argument for remand, the Court agrees with Defendant that "[a]lthough Plaintiff presents these as two different arguments, they are really one and the same because the impairments that Plaintiff claims should have been added to her RFC all come from the three doctors' opinions. Had those opinions been given more weight, those limitations naturally would have become part of the RFC findings." See docket no. 24, footnote 4.

[40] Docket no. 24.

Andersen's opinion to not be afforded greater weight.[41] Lastly, Defendant argues that the ALJ's omission of Dr. Durham's opinion was consistent with the evidence and "the fact that there is no real contradiction between Dr. Durham's opinions and the ALJ's finding shows that any error that was made in omitting mention of the report did not harm Plaintiff in any way."[42]

Under the regulations, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairments, including…symptoms, diagnosis, and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions."[43] Social Security Ruling ("SSR") 96-8p provides "[t]he RFC assessment must always consider and address medical source opinions. If the assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[44]

In the 10th Circuit, "[t]he ALJ must give 'controlling weight' to the treating physician's opinion, provided that opinion 'is well-supported…and is not inconsistent with other substantial evidence.'"[45] Further,

> [e]ven if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 404.1527]. Those factors are: (1) the length of treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and

---

[41] Id.

[42] Id. at p. 20.

[43] 20 C.F.R. § 416.927(a)(2).

[44] SSR 96-8p, 1996 WL 374184, at *7 (Effective July 2, 1996).

[45] White v. Barnhart, 287 F.3d 903, 907 (10th Cir. 2001)(citing 20 C.F.R. § 404.1527(d)(2)).

8

(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Under the regulations, the agency rulings, and [Tenth Circuit] case law, an ALJ must give good reasons…for the weight assigned to a treating physician's opinion that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight. If the ALJ rejects the opinion completely, he [or she] must give specific, legitimate reasons for doing so.[46]

In addition, as with other evidentiary matters, when an ALJ is considering medical opinion evidence, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies.[47] Lastly, "[i]n choosing to reject [a] treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."[48]

### a. Dr. Douglas Callahan

In this case, the ALJ did not specifically address each of the factors set forth in the regulations for evaluating Dr. Callahan's opinion.[49] However, the ALJ is not required to discuss each factor, as long as "the ALJ's decision [is] sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[50] Here, the Court finds that the ALJ's analysis of Dr. Callahan's opinion sufficiently allowed the Court to follow the ALJ's reasoning and provided legitimate reasons for giving Dr. Callahan's opinion "little weight." Upon review, although it is

---

[46] Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004)(internal quotations and citations omitted); see also 20 C.F.R. § 404.1527(c); Social Security Ruling ("SSR") 96-2p.

[47] See e.g., Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988).

[48] Langley at 1121 (quoting McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)("holding [The 10th Circuit] held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's care is not a good reason to reject his opinion as a treating physician.")

[49] See 20 C.F.R. § 404.1527(d)(2).

[50] Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007)(internal quotation marks omitted).

ambiguous as to whether Dr. Callahan or one of his colleagues saw Plaintiff from 2008 to 2010, the Court agrees with the arguments set forth by the Defendant that Dr. Callahan did indeed see Plaintiff infrequently and Dr. Callahan's opinion did not appear to be supported by his treatment records. Therefore, the ALJ's opinion with respect to opinions of Dr. Callahan is in line with applicable standards.

### b. Dr. Sarah Andersen

Next, Plaintiff argues the ALJ erred by according Dr. Sarah Andersen's opinion "little weight." Plaintiff argues that the Dr. Andersen's treatment notes support her findings of disability and the ALJ did not provide sufficient reasons for discounting her opinions.

Dr. Andersen's first visit with Plaintiff occurred on June 16, 2009—approximately two weeks prior to the date that Plaintiff was last insured.[51] As the ALJ correctly points out, the Administrative Record contains records for Plaintiff's visits with Dr. Andersen in June, July and November 2009 and January and November 2010.[52] Dr. Andersen completed the Rheumatoid Arthritis RFC opinion form on November 15, 2010—approximately one year after the date Plaintiff was last insured. Through the opinion form, Dr. Andersen opined that Plaintiff's impairments, symptoms and limitations have lasted since November 11, 2004.[53] The ALJ found this to be a reason to discount Dr. Andersen's opinion because she began treating Plaintiff in 2009.

The ALJ further discounted Dr. Andersen's opinion because "[e]ven if the limitations Dr. Andersen reported in November 2010 are accurate based on a recent increase in symptoms

---

[51] Tr. at 478.

[52] Tr. 478-519.

[53] Tr. at 523.

due to discontinuation of Naproxen, they shed little light on the claimant's abilities on or before her date last insured in June 2009."[54]

The Court finds the ALJ's reasons for discounting Dr. Andersen's opinion to be in line with the applicable legal standards. Specifically, the Court finds that the ALJ gave "good reasons" for the weight assigned to Dr. Andersen's opinions that are sufficiently specific.[55]

Upon consideration of the date Plaintiff was last insured in conjunction with Dr. Andersen's treatment notes and the date she filled out opinion form, the Court agrees with the ALJ that there is an issue with respect to relevancy of Dr. Andersen's opinion. In addition, as detailed by Defendant and contained within Dr. Andersen's treatment notes, Plaintiff's symptoms began increasing in January 2010 and by November 2010 Plaintiff's Raynaud's symptoms had increased. Dr. Andersen's treatment note from November 15, 2010, the date she filled out the RFC form, indicates that Plaintiff's symptoms may have increased due to discontinuation of Naproxen.[56] Therefore, the ALJ's statement that the limitations assessed by Dr. Andersen "shed little light on the claimant's abilities on or before her date last insured in June 2009" is supported by substantial evidence.

However, the Court does find error in the ALJ's RFC determination that Plaintiff had "no mental impairments." Dr. Andersen's treatment notes and the opinion form are in direct conflict with this finding because Dr. Andersen documents Plaintiff's depression throughout her treatment of Plaintiff as well as in the Rheumatoid Arthritis opinion form.[57] Further, Dr.

---

[54] Tr. at 23. As to the Plaintiff's other argument that the ALJ's opinion with regard to Dr. Andersen was in error because the discussion with regard to Plaintiff's bowel movement frequency is of little relevance, the Court agrees with the Defendant that this may be a drafting error and not dispositive to the Court's decision. See docket no. 24 at p. 17.

[55] See Langley at 1119.

[56] Tr. at 521.

[57] See Tr. at 523.

Anderson prescribed antidepressant medication and indicated Plaintiff's fatigue may possibly be due to "underlying CTD but also may be due to depression."[58] Therefore, the Court finds that to the extent the ALJ failed to include Dr. Andersen's findings as to Plaintiff's depression in the RFC, his opinion is in error.

### c. Dr. Christina Durham

Dr. Christina Durham evaluated plaintiff on July 1, 2009.[59] Dr. Durham noted that Plaintiff was referred to her because Plaintiff alleged disability due to depression.[60] Regarding her symptoms and complaints, Dr. Durham noted that Plaintiff "indicated that 'fatigue' is the biggest problem and [she] has pain in her joints and muscles."[61] After discussing Plaintiff's history, Dr. Durham concluded that Plaintiff "did not present with symptoms of depression and anxiety, but rather limited coping skills and difficulty tolerating frustration and stress."[62] Dr. Durham diagnosed Plaintiff with a GAF score of 60 and:

```
Axis I:   309.09      Adjustment Disorder, Unspecified (health concerns)
Axis II:  V71.09      No Diagnosis
Axis III:             Irritable Bowel Syndrome, Connective Tissue Disorder
Axis IV:              Limited Coping Skills, Health Related Concerns[63]
```

Dr. Durham then opined that Plaintiff's prognosis is "likely to be good" with a "combination of individual therapy and increased coping strategies."[64]

Here, the ALJ did not specifically address nor weigh Dr. Durham's opinion. Rather, Dr. Durham's opinion is mentioned in the ALJ's opinion only with regard to examples that

---

[58] Id.

[59] Tr. at 451.

[60] Id.

[61] Tr. at 452.

[62] Tr. at 456.

[63] Tr. at 455.

[64] Id.

"claimant describes her symptoms as more severe than the record indicates."[65] Defendant essentially argues that although Dr. Durham's opinion was not discussed, this error was harmless because it would not have changed the RFC or the ultimate determination of disability because Dr. Durham did not diagnosis a "severe impairment."

The Court finds this argument unpersuasive. SSR 96-8p clearly states "the RFC assessments must <u>always consider *and* address medical source opinions</u>." Here, Dr. Durham's opinion is a "medical source opinion" as defined by 20 C.F.R. § 416.927(a)(2) and while it may be true that the ALJ considered Dr. Durham's opinion, the ALJ's decision did not discuss Dr. Durham's opinion as required by SSR 96-8p.[66] Further, the ALJ's lack of discussion of Dr. Durham's opinion contradicts the ALJ's own statement of the law that "*every medical opinion regardless of source must be evaluated…*"[67] Therefore, the Court finds the ALJ's opinion to contain legal error. Further, as explained above, the ALJ's RFC determination that Plaintiff had "no mental limitations" is not supported by substantial evidence because Dr. Durham did diagnose Plaintiff with an "adjustment disorder" and "limited coping skills and difficulty tolerating frustration and stress."[68]

## **CONCLUSION**

For the foregoing reasons, the Court finds that the Plaintiff's arguments regarding the ALJ's rejection of the Plaintiff's treating and examining physicians have merit and warrants remand for further proceedings as set forth herein. Therefore, IT IS HEREBY ORDERED that

---

[65] See Tr. at 18, 22.

[66] While not argued by the parties, the Court also finds that the ALJ's opinion is deficient as to the opinion of Dr. Macievic, who examined Plaintiff on March 28, 2009 and authored a report as to her limitations. The ALJ failed to address this opinion or provide any weight to it. Upon remand, the ALJ should consider and weigh this opinion as required by SSR 96-8p. See Tr. 399-402.

[67] Tr. at 22.

[68] Tr. at 455-456.

the Commissioner's decision is REVERSED AND REMANDED for further proceedings consistent with this opinion.

DATED this 26 September 2013.

_____
Brooke C. Wells
United States Magistrate Judge